UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,    HON. LAURIE J. MICHELSON
                              CASE NO. 23-20434
    Plaintiff,

vs.

ANDREW NICKELS,

    Defendant.
_____/

## DEFENDANT NICKELS' SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE

**Introduction**

    The US Attorney's office certainly has the broad discretion to decide who to charge with a crime, what crime or crimes to charge, whether to charge any enhancements or whether diversion or some alternative program is appropriate. In this case, despite the fact that Andrew Nichols is 38 years old and has no prior criminal history and that on one single occasion he left a message that constituted a threat yet took no other action or preparation, the Government sought to charge Andrew with a federal felony and now are requesting a custodial sentence. This case should have, instead, been submitted for diversion. There does not appear to be any logical rationale why this case, unlike cases that involved serious drug offenses, fraud, even assault that have been approved for diversion did not get diversion consideration or approval. There was no assault or specific threat or an attempt to assault or any weapons or conduct that

~ 1 ~

would suggest the threat was anything but someone with mental health issues who was not on his proper medication at the time.

Andrew Nickels will now have a federal felony that he will never be able to expunge. Any jobs that he could seek and obtain have been even further reduced with this conviction.  A custodial sentence will not deter anyone who is similarly suffering from mental health.  A custodial sentence will serve only as an unnecessary punishment.

While the Government did not exercise its discretion to impose a sentence of diversion with mental health treatment and supervision, that would have actually been a benefit not only to the Andrew but to society in general, this Court certainly has the discretion to impose a sentence of time served any to continue treatment.

The Sixth Circuit has "repeatedly found information relating to an individual's. . . mental health . . . among other things, to be relevant to sentencing." United States v. Pineda, 755 F. App'x 543, 548 (6th Cir. 2018 (Stranch, J., concurring).  This is such an important factor that counsel may give ineffective assistance by failing to seek a downward departure where the supporting evidence of the mental condition might have convinced the Court to adjust a sentence downward. United States v. Parker, 57 F. App'x 803, 805 (10th Cir. 2003) (denying a certificate of appealability where a petitioner failed to show a "reasonable probability" that the court would have imposed a shorter sentence had counsel sought a downward departure for his mental health history).

Holland v. United States, No. 2:16-CV-221, 2019 U.S. Dist. LEXIS 128300, at *19 (E.D. Tenn. Aug. 1, 2019)

Mr. Nickels will appear before the Court for sentencing on July 9, 2024, having plead guilty to an one count Information, Transmitting Threats in Interstate Commerce, pursuant to 18 U.S.C. Section 875(c).

There was not a Rule 11 plea agreement in this matter.  It is not disputed that Defendant's Offense Base Level is 12 and a criminal history I.  The probation department has calculated Mr. Nickels' guidelines to be 10-16 months.

**Facts**

On November 12, 2020, right after the elections, Mr. Nickels contacted the City Clerk's Office in Rochester Hills, Michigan from his home in Indianapolis, Indiana, cursing, continuously ranting about things that didn't even make sense and of course threats.  Clearly, after reading the exact verbiage from the PSR on page 3, you would definitely tell there was something wrong with the caller.  Mr, Nickels didn't even know the name of the person who answered the phone.

It was not until August 12, 2021, nine months later, when the FBI was contacted about these threats.  On January 5, 2022, the FBI finally interviewed the complainant about what occurred almost a year after the incident.  After the call, the complainant indicated to authorities that she felt a "fight or flight sensation and nausea".  Is that something serious enough to send a person to prison for having a psychological issue?  If they would've sent an agent to see Mr. Nickels after this occurred, no one would have taken him seriously when they met him.  He is a complete gentlemen!

Mr. Nickels was diagnosed with Schizoaffective Disorder and Attention Deficit Hyperactivity Disorder in 2008. Both diagnosis required medication to control behavior and also outbursts. It is quite obvious that Mr. Nickels was having his moment since he was not taking his medication. Since being on bond, he has not had violations.

**The Methodology**

Since the Supreme Court's decision in *United States v Booker*, 543 U.S. 220, 125 S.Ct 738 (2005), a district court's sentencing decision is to be controlled by the broad overall mandate of 18 U.S.C. Section 3553(a). However, "the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals". Id., at 764.

In fashioning the appropriate sentence, Section 3553(a) commands that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to fulfill the factors set forth in 3553. As stated by the Sixth Circuit in *United States v Foreman*, 436 F3d 638, 644 (6th Cir, 2006):

> It is worth noting that a district court's job is not to impose a "reasonable" sentence. Rather a district court's mandate is to impose "a sentence **sufficient, but not greater** than necessary, to comply with the purposes" of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task. Id, at fn. 1. (Emphasis added).

**The 3553(a) Factors**

The factors identified in 18 U.S.C. Section 3553(a), which directs a sentencing judge's exercise of discretion, are undoubtedly well known to the

~ 4 ~

Court, but perhaps worth setting forth nonetheless, as a framework for the discussion which follows.  In addition to the Guidelines and Policy Statements (factors (4) and (5), omitted below) they are as follows:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed-
  (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) To afford adequate deterrence to criminal conduct;
  (C) To protect the public from further crimes of the defendant; and
  (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) The kinds of sentences available

****

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;
(7) The need to provide restitution to any victims of the offense.

To a great degree, of course, these considerations are interlinked.  Thus, for example, explication of "the history and characteristics of the defendant" is a necessary precondition to understanding "the nature and circumstances of the offense".  Of course the defendant's "history and characteristics" also supports the factors that may demonstrate the "need" for any particular sentence or kind of sentence.  There must also be consideration as to whether the imposition of sentence outside the mine constitutes a reasonable response to the particular facts of the case, or is an example of "unwarranted sentence disparities."

As the Supreme Court explained in its recent decision in *Gall v United States,* in applying these factors, a sentencing judge "must make an individualized assessment based on the facts presented" by the case, without giving presumptive weight to the Guidelines sentencing range.

Such an approach is not only commanded by the holding of *United States v Booker, 543 U.S. 220 (2005)*, but is logical as well; in view of the degree to which the Guidelines are driven principally by the nature of the offense conduct, and only minimally by the characteristics of the offender.

**A.  The Guidelines**

As noted above, the Assistant U.S. Attorney has calculated a guideline range of 10-16 months based on total offense level of 12 and a criminal history category of I.  The United States Probation Officer, Alexander Roberts contends as well that guideline range should be 10-16 months.  There is no minimum mandatory sentence.

**B.  The History and Characteristics of the Defendant**

Mr. Roberts of the United States Probation Department has set forth not only the offense conduct but the offender's characteristics as well. Undersigned counsel sees no need to simply reiterate what is contained in the report.  Nevertheless, undersigned counsel believes it's appropriate to supplement the report with some additional information.

Although Mr. Nickels' involvement with transmitting a threat certainly must be condemned and punished, however, undersigned counsel respectfully submits that it should not completely overshadow that Mr. Nickels is single with with no children.  Mr. Nickels has been in mental health treatment after being diagnosed in 2008 with a mental illness.  Both of his parents have been very supportive during the pendency of this case.  His parents were completely

cooperative with the agents and government, and had to go through the agony of testifying against him before the grand jury, which was what the Government needed to indict him. Can you imagine how difficult that was?

### B. The "need for the sentence" to comport with the traditional purposes of punishment.[1]

1  <u>Retribution.</u>  The first of the statutory factors-that the sentence imposed should "reflect the seriousness of the offense…promote respect for the law, and …provide just punishment for the offense," essentially echoes the traditional concept of "retribution."

Such measurements are of course difficult to draw with precision, and, as an advocate, it is difficult for counsel to maintain objectivity. However, while undoubtedly, the offense is a serious one, Mr. Nickels is capable of being a productive citizen in our community. He has been felony free for thirty-eight years so I am sure staying out of trouble is not a problem. He was finally employed in a full time job after numerous interviews.

2  <u>Deterrence-general and special</u>.  The two specifics of deterrence call for two kind of analysis. As for general deterrence-the need to fashion a punishment which will deter the public at large from taking the same course of action as did the defendant- it seems reasonable to conclude that a sentence which results in defendant having to serve any prison term would serve as a sufficient disincentive to others who might otherwise be tempted to engage in this

---

[1] The "traditional purposes of punishment …include retribution, rehabilitation, prevention of further crimes by the defendant, and deterrence of the defendant and others who might contemplate committing similar crimes. *Hobbs v County of Westchester, 397 F.3d 133, 158 (2d Cir. 2005)(citing 1 W. LaFave, Substantive Criminal Law Section 1.5(a)(2d ed.2003).*

same conduct.  However, we contend that a custodial sentence is not needed here.  No one was physically injured nor has Mr. Nickels ever been acting in this type of behavior prior to this offense.  He simply was not on his medication at the time.

With respect to special deterrence-the need to dissuade the defendant himself from future illegal conduct – the question seems far simpler.  Mr. Nickels has certainly gotten the message that there are severe consequences for his actions and he is genuinely remorseful.

3   Incapacitation.  "The rationale for incapacitation is to allow society to protect itself from persons deemed dangerous because of their past criminal history."  *Allen v Woodford,* 395 F.3d 979, 1009 (9th Cir. 2004)(citing W. LaFave& A. Scott, Substantive Criminal Law 38 Section 1.5 (2003).  Defendant Nickels is not a danger to society nor does he have any assaultive felony convictions in his background.  Likewise, as a result of Defendant's age, it is highly likely that after serving his sentence in this matter, that he would not be involved in any further criminal activity.

4   Rehabilitation.  Mr. Nickels is well on his way to being rehabilitated. It started when he was arrested by law enforcement officers and is now facing a prison sentence of 10-16 months.  There is no question that Mr. Nickels clearly gets the message that wrongful criminal acts will clearly result in incarceration for any future crimes.  Unfortunately, Mr. Nickels is not the person who needs to be incarcerated.  He now has a full time job which was hard to find and would be even harder with this conviction.

For sentencing purposes, Defendant Nickels age should also be considered. The Guidelines do not consider that recidivism drops substantially with a defendant's age. <u>Simon v. United States</u>, 361 F.Supp.2d 35, 40 (2005)(citing <u>Nellum</u>, 2005 U.S. Dist. Lexis 1568). Usually, under Guidelines Section 5H1.1 age is not relevant, however, under Section 3553(a)(2)(c), defendant's age is "relevant to the issue of protecting the public from further crimes of the defendant". <u>Nellum,</u> 2005 U.S. Dist. Lexis 1568 at 9; <u>See also Booker</u>, 543 U.S. at 260, 125 S.Ct. at 765.

In <u>Ward</u>, the defendant was convicted of conspiracy to distribute and possess cocaine and "crack" cocaine, and possession of a firearm while committing a drug offense. The defendant had total offense level of 45, which mandated a life sentence under the guidelines. At the time of his offense, defendant was 49 years old with a Criminal History Category I. According to defendant's presentence report, he did not have a juvenile or adult criminal record except for four minor traffic violations. Otherwise, defendant did not have a background of criminal conduct. The court departed downward based on his criminal history coupled with his age. <u>U.S. v Ward</u>, 814 F.Supp. 23 (E.D. Va 1993).

In <u>Nellum</u>, defendant pleaded guilty to cocaine distribution charges. The court held that a sentence below the Guidelines was sufficient to satisfy the purposes of sentencing in defendant's case. The court considered the guidelines and statutory factors, such as defendant's advanced age, that he was a good

father who had a good relationship with his children, and his likelihood of recidivism.

Defendant Nickels age and maturity have made him realize the need to continue taking his medications for his psychological issues.  As a result of no prior felony record, no physical injuries to the victim, the fact that Mr. Nickels is employed, we are respectfully requesting a variance in this matter under the guideline range.  The community definitely will not have to worry about Mr. Nickels returning to illegal activity.

    D. **The kinds of sentences available.**

In the wake of *Booker,* the Court is free to impose any kind of sentence which it deems appropriate.  It seems clear, however, that given Mr. Nickels' age, family background, acceptance of responsibility in this matter, and lack of criminal history, there is strong likelihood that he would not be involved in criminal activity again.  Therefore, a variance is necessary sentence that would be sufficient but not greater than necessary

    Respectfully submitted,

    s/Steven Scharg_____
    STEVEN SCHARG
    Attorney for Defendant
    615 Griswold, Suite 1125
    Detroit, Michigan 48226
    (313) 962-4090
    Mi Bar No. P43732
    scharg1924@gmail.com

Dated:  July 7, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

> Frances Carlson
> 211 W. Fort Street, #2001
> Detroit, Michigan 48226
> (313) 226-9100
> frances.carlson@usdoj.gov